TROY LAW, pllc
John Troy (JT 0481)
41-25 Kissena Blvd., Suite 119
Flushing, NY 11355
Tel:    (718) 762-1324
*Attorney for the Plaintiff, proposed FLSA*
*Collective and potential Rule 23 Class Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x

CHOO LEE TAN a/k/a Molly Tan,
*on behalf of herself and others similarly situated,*
                                                    Plaintiff,

                          v.

SHK MANAGEMENT INC.
        d/b/a AKA Central Park Hotel; and
        d/b/a Korman Communities, Inc.;
STEVEN H. KORMAN,
LAWRENCE KORMAN,
BRADLEY I. KORMAN,
MARK KORMAN,
KATHLEEN M. PALMEN,
ROBERT S GROSSMAN,
JAQUELINE AUSTIN a/k/a Jackie Austin,
MARIZELA ALFARO,
                                          Defendants.
-------------------------------------------------------------x

**Case No: 16-cv-9302**

**29 U.S.C. § 216(b)**
**COLLECTIVE ACTION &**
**F.R.C.P. 23 CLASS ACTION**

**COMPLAINT**

**JURY TRIAL DEMANDED**

        Plaintiff CHOO LEE TAN a/k/a Molly Tan, (hereafter referred to as "Plaintiff"), on

behalf of herself and others similarly situated, by and through her attorney, Troy Law, PLLC,

hereby brings this complaint against Defendants SHK MANAGEMENT INC.d/b/a AKA Central

Park Hotel; and d/b/a Korman Communities, Inc.; STEVEN H. KORMAN, LAWRENCE

KORMAN, BRADLEY I. KORMAN, MARK KORMAN, KATHLEEN M. PALMEN,

ROBERT S GROSSMAN, JAQUELINE AUSTIN a/k/a Jackie Austin, IZELA ALFARO, and

alleges as follows:

## INTRODUCTION

1.  This action is brought by Plaintiff, on behalf of herself as well as other similarly situated
    employees against Defendants for alleged violations of the Federal Labor Standards Act,
    ("FLSA") 29 U.S.C. § 201 *et seq.* and of the New York Labor Law (NYLL), arising from
    Defendants' various willful and unlawful employment policies, patterns and/or practices.

2.  Plaintiff alleges pursuant to the FLSA, that she is entitled to recover from the Defendants:
    (1) unpaid wage and minimum wage compensation, (2) unpaid overtime wage
    compensation, (3) liquidated damages, (4) prejudgment and post-judgment interest; and/or
    (5) attorneys' fees and costs.

3.  Plaintiff further alleges pursuant to New York Labor Law § 650 *et seq.* and 12 New York
    Codes, Rules and Regulations §§ 146 ("NYCRR") that  is entitled to recover from the
    Defendants: (1) unpaid wage and minimum wage compensation, (2) unpaid overtime wage
    compensation, (3) up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to
    provide a Time of Hire Notice detailing rates of pay and payday, (4) up to five thousand
    dollars ($5,000) per Plaintiff for Defendants' failure to provide a paystub that accurately and
    truthfully lists employee's hours along with the name, employer's name, employer's
    address and telephone number, employee's rate or rates of pay, any deductions made from
    employee's wages, any allowances claimed as part of the minimum wage, and the employee's
    gross and net wages for each pay day, (5) liquidated damages equal to the sum of unpaid
    overtime in the amount of twenty five percent under NYLL §§190 *et seq.*, §§650 *et seq.*,
    and one hundred percent after April 9, 2011 under NY Wage Theft Prevention Act, (6) 9%
    simple prejudgment interest provided by NYLL, (7) post-judgment interest, and (8)
    attorney's fees and costs.

4. Plaintiff also brings this action under the Civil Rights Act of 1866, 42 U.S.C. §1981; Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq.*, as amended by the Civil Rights Act of 1991, ("Title VII") and the New York Human Rights Law, "NYHRL"), 15 N.Y. Exec. Law §296 *et seq.* for damages arising from discrimination based on race, national origin, age, religion, disability and discriminatory terms and conditions of employment imposed by above-captioned Defendants.

5. On August 22, 2016, Plaintiff filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"), alleging race discrimination, age discrimination, and disability discrimination.

6. Plaintiff is awaiting the EEOC to issue a dismissal and a Notice of Right to Sue.

## **JURISDICTION AND VENUE**

7. This Court has original federal question jurisdiction over this controversy under 29 U.S.C. §216(b), 28 U.S.C. § 1331.

8. This Court has jurisdiction over state law claims asserted here pursuant to the Class Action Fairness Act, 28 U.S.C. §1332(d)(2), and has supplemental jurisdiction over the New York Labor Law claims pursuant to 28 U.S.C. § 1367(a).

9. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §§ 1391(b) and (c), because Defendants conduct business in this District, and the acts and omissions giving rise to the claims herein alleged took place in this District.

## **PLAINTIFF**

10. Plaintiff CHOO LEE TAN a/k/a Molly Tan was employed by Defendant SHK Management, Inc. a/k/a AKA Central Park Hotel at 42 West 58th Street, New York, NY 10019 from on or

about November 13, 2007 to April 20, 2016 as a "housekeeping supervisor."

11. However, though classified as an "housekeeping supervisor," Plaintiff CHOO LEE TAN a/k/a Molly Tan's primary work function involves cleaning resident rooms and resident areas, including, but not limited to: stripping/ making beds; dusting and vacuuming, cleaning bathrooms, replenishing supplies, cleaning windows, mirrors and patios as needed; and doing the logistics to assign housekeepers to also clean resident rooms and resident areas once receiving orders from her supervisor and to inspect rooms after housekeeping team members had completed them.

## **DEFENDANTS**

### *Corporate Defendant*

12. Corporate Defendant SHK MANAGEMENT INC. d/b/a AKA Central Park Hotel, is a Pennsylvania business corporation that also does business in New York, with a process of service of address at 80 State Street, Albany, NY 12207.

13. SHK MANAGEMENT INC. d/b/a AKA Central Park Hotel, is a business engaged in interstate commerce that has gross sales in excess of Five Hundred Thousand Dollars ($500,000) per year.

### *Owner/ Operator Defendant*

14. Owner/ Operator Defendant STEVEN H. KORMAN is the President of SHK MANAGEMENT INC. d/b/a AKA Central Park Hotel.

15. STEVEN H. KORMAN is the father of LAWRENCE KORMAN a/k/a Larry Korman.

16. Defendant STEVEN H. KORMAN (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employee records.

17. Defendant STEVEN H. KORMAN acted intentionally and maliciously and is an employer

pursuant to FLSA, 29 U.S.C. §203d, and regulations promulgated thereunder, 29 C.F.R. §791.2, NYLL §2 and the regulations thereunder, and is jointly and severally liable with SHK MANAGEMENT INC. d/b/a AKA Central Park Hotel.

18. Owner/ Operator Defendant LAWRENCE KORMAN a/k/a Larry Korman is the Vice President of SHK MANAGEMENT INC. d/b/a AKA Central Park Hotel.

19. Defendant LAWRENCE KORMAN a/k/a Larry Korman (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employee records.

20. Defendant LAWRENCE KORMAN a/k/a Larry Korman acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. §203d, and regulations promulgated thereunder, 29 C.F.R. §791.2, NYLL §2 and the regulations thereunder, and is jointly and severally liable with SHK MANAGEMENT INC. d/b/a AKA Central Park Hotel.

21. Owner/ Operator Defendant BRADLEY I. KORMAN a/k/a Brad Korman is the Secretary of SHK MANAGEMENT INC. d/b/a AKA Central Park Hotel.

22. BRADLEY I. KORMAN a/k/a Brad Korman is the brother of LAWRENCE KORMAN a/k/a Larry Korman.

23. Defendant BRADLEY I. KORMAN a/k/a Brad Korman (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employee records.

24. Defendant BRADLEY I. KORMAN a/k/a Brad Korman acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. §203d, and regulations promulgated

thereunder, 29 C.F.R. §791.2, NYLL §2 and the regulations thereunder, and is jointly and

severally liable with SHK MANAGEMENT INC. d/b/a AKA Central Park Hotel.

25. Owner/ Operator Defendant MARK KORMAN is a principal of SHK MANAGEMENT

INC. d/b/a AKA Central Park Hotel.

26. MARK KORMAN is the brother of LAWRENCE KORMAN a/k/a Larry Korman.

27. Defendant MARK KORMAN (1) had the power to hire and fire employees, (2) supervised

and controlled employee work schedules or conditions of employment, (3) determined the

rate and method of payment, and (4) maintained employee records.

28. Defendant MARK KORMAN acted intentionally and maliciously and is an employer

pursuant to FLSA, 29 U.S.C. §203d, and regulations promulgated thereunder, 29 C.F.R.

§791.2, NYLL §2 and the regulations thereunder, and is jointly and severally liable with

SHK MANAGEMENT INC. d/b/a AKA Central Park Hotel.

29. Owner/ Operator Defendant KATHLEEN M. PALMER is the Treasurer of SHK

MANAGEMENT INC. d/b/a AKA Central Park Hotel.

30. Defendant KATHLEEN M. PALMER (1) had the power to hire and fire employees, (2)

supervised and controlled employee work schedules or conditions of employment, (3)

determined the rate and method of payment, and (4) maintained employee records.

31. Defendant KATHLEEN M. PALMER acted intentionally and maliciously and is an

employer pursuant to FLSA, 29 U.S.C. §203d, and regulations promulgated thereunder, 29

C.F.R. §791.2, NYLL §2 and the regulations thereunder, and is jointly and severally liable

with SHK MANAGEMENT INC. d/b/a AKA Central Park Hotel.

32. Owner/ Operator Defendant ROBERT S. GROSSMAN is the Assistant Secretary of SHK

MANAGEMENT INC. d/b/a AKA Central Park Hotel.

33. ROBERT S. GROSSMAN is the lawyer of SHK

34. Defendant ROBERT S. GROSSMAN (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employee records.

35. Defendant ROBERT S. GROSSMAN acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. §203d, and regulations promulgated thereunder, 29 C.F.R. §791.2, NYLL §2 and the regulations thereunder, and is jointly and severally liable with SHK MANAGEMENT INC. d/b/a AKA Central Park Hotel.

36. Defendant JAQUELINE AUSTIN a/k/a Jackie Austin is the Housekeeping Director of SHK MANAGEMENT INC. d/b/a AKA Central Park Hotel.

37. Defendant JAQUELINE AUSTIN a/k/a Jackie Austin (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employee records.

38. Defendant JAQUELINE AUSTIN a/k/a Jackie Austin acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. §203d, and regulations promulgated thereunder, 29 C.F.R. §791.2, NYLL §2 and the regulations thereunder, and is jointly and severally liable with SHK MANAGEMENT INC. d/b/a AKA Central Park Hotel.

39. Defendant MARIZELA ALFARO is the Housekeeping Director of SHK MANAGEMENT INC. d/b/a AKA Central Park Hotel.

40. Defendant MARIZELA ALFARO (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employee records.

41. Defendant MARIZELA ALFARO acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. §203d, and regulations promulgated thereunder, 29 C.F.R. §791.2, NYLL §2 and the regulations thereunder, and is jointly and severally liable with SHK MANAGEMENT INC. d/b/a AKA Central Park Hotel.

## STATEMENT OF FACTS

*Plaintiff's Wage-and-Hour Claims*

42. Defendants committed the following alleged acts knowingly, intentionally and willfully against the Plaintiff, the FLSA Collective Plaintiffs, and the Class.

43. From November 13, 2007 to April 20, 2016, Plaintiff CHOO LEE TAN a/k/a Molly Tan worked at SHK Management, Inc. a/k/a AKA Central Park Hotel at 42 West 58th Street, New York, NY 10019.

44. From November 13, 2007 to June 2010, Plaintiff's regular work schedule ran from:

    a.  09:00 to 17:00 for eight (8) hours per day on Wednesday through Sunday for forty (40) hours per week.

45. From November 13, 2007 to June 2010, Plaintiff would at times work over forty (40) hours per week.

46. From July 2010 to April 2012, after Director of Housekeeping EDWARD VARGAS was fired, Plaintiff's regular work schedule ran from:

    a.  07:30 to 15:45 to 16:00 for eight and one quarter (8.25) to eight and a half (8.5) hours per day on Monday, Tuesday, Wednesday, Thursday, and Friday for forty-one and one quarter (41.25) to forty-two and a half (42.5) hours per week.

47. From May 2012 to March 9, 2016, after Director of Housekeeping JAQUELINE AUSTIN a/k/a Jackie Austin was hired, Plaintiff's regular work schedule ran from:

    a. 07:30 to 15:30 for eight (8) hours per day on Tuesday, Wednesday, Thursday, and Friday for thirty-two (32) hours per week.

    b. 08:00 to 17:00 for nine (9) hours per day on Saturday.

48. From May 2012 to March 2016, Plaintiff would regularly have to stay after on Tuesday, Wednesday, Thursday and Friday if the hotel was busy.

49. From March 2016 to April 20, 2016, Plaintiff's regular work schedule ran from:

    a. 10:30 to 19:00 for eight and a half (8.5) hours on Wednesday, Thursday, Friday, Saturday and Sunday for forty-two and a half (42.5) hours per week.

50. From April 1, 2016 to April 20, 2016, Plaintiff worked fifty-three (53) hours per week.

51. From on or about November 13, 2007 to March 31, 2009, Plaintiff was paid a flat compensation of one thousand five hundred sixteen dollars and thirty-four cents ($1,516.34) for every half a month.

52. From on or about April 1, 2009 to May 15, 2010, Plaintiff was paid a flat compensation of one thousand six hundred thirty-three dollars and thirty-four cents ($1,633.34) for every half a month.

53. From on or about January 1, 2011 to December 31, 2014, Plaintiff was paid a flat compensation of one thousand eight hundred and seventy-five dollars ($1,875) for every half a month.

54. From on or about January 1, 2015 to April 20, 2016, Plaintiff was paid a flat compensation of one thousand eight hundred and seventy-five dollars ($1,875) for every half a month.

55. At all relevant times, Plaintiff was not given a fixed break for lunch or dinner during her workday.

56. At all relevant times, Defendants knowingly and willfully failed to pay Plaintiff her lawful

overtime compensation of one-and-a-half time (1.5x) her regular rate of pay for all hours worked over forty (40) in a given work week.

57. While employed by Defendants, Plaintiff was not exempt under federal and state laws requiring employers to pay employees overtime.

58. Defendants failed to keep full and accurate records of Plaintiff's hours and wages.

59. At all relevant times, Defendants knowingly and willfully failed to provide Plaintiff and similarly situated employees with Time of Hire Notice reflecting true rates of pay and payday.

60. At all relevant times, Defendants knowingly and failed to provide Plaintiff and similarly situated employees with paystubs that lists employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day as required by NYLL §195(1).

### *Plaintiff's Job Position*

61. Even though CHOO LEE TAN was hired as a "housekeeper supervisor", which is a union-eligible job position, when CHOO LEE TAN a/k/a Molly Tan attempted to join the union, she found out that she was instead "designated" in the company payroll system as a "housekeeping manager."

62. As a "housekeeping manager," CHOO LEE TAN was not eligible to join the AFL-CIO New York Hotel and Motel Trades council Union Local 6.

63. Union members are not expected to bend down or lift heavy objects.

### *Plaintiff's Age Discrimination Claim*

64. CHOO LEE TAN a/k/a Molly Tan was born on February 5, 1969.

65. On February 5, 2009, CHOO LEE TAN a/k/a Molly Tan was forty (40) years old.

66. In May 2012, SHK MANAGEMENT INC. d/b/a AKA Central Park Hotel; and d/b/a Korman Communities, Inc. hired a new Director of Housekeeping, JAQUELINE AUSTIN a/k/a Jackie Austin.

67. After JAQUELINE AUSTIN a/k/a Jackie Austin was hired, JAQUELINE AUSTIN a/k/a Jackie Austin would yell at CHOO LEE TAN a/k/a Molly Tan in-person and via the radio.

68. As a result, while other workers do not need to bend knee-down and hip-down to check underneath the bed and wardrobe for each room, CHOO LEE TAN has to.

69. In addition, JAQUELINE AUSTIN a/k/a Jackie Austin brought in bulk Tilex (a mold and mildew cleaner) whose side effects include causing headaches and erratic heartbeats and which has been prohibited by the union.

70. While the use of Tilex is not mandatory, and the company also had in stock a company cleaner without chemicals that induces side effects, many female hotel employees chose to use Tilex because of its strength in cleaning.

71. Other female hotel employees, including ZUNILDA, choose not to use the cleaner because using it causes her heart to beat erratically.

72. As the housekeeping supervisor, CHOO LEE TAN was responsible for inspecting all rooms after they were cleaned, including Tilex-cleaned rooms.

73. When CHOO LEE TAN complained to JAQUELINE AUSTIN a/k/a Jackie Austin about her headaches as a result of the cleanser, JAQUELINE AUSTIN a/k/a Jackie Austin replied: "You know what? I'm telling you, you are getting old."

74. When CHOO LEE TAN conferred with her coworker BELKIS VENTURA, VENTURA told CHOO LEE TAN that the cleaner's common side effect includes headaches, not because of her age.

75. Behind closed doors, JAQUELINE AUSTIN a/k/a Jackie Austin could frequently be heard yelling for no reason at CHOO LEE TAN a/k/a Molly Tan.

76. The upper level management was aware of JAQUELINE AUSTIN a/k/a Jackie Austin's mistreatment of Plaintiff.

77. CHOO LEE TAN a/k/a Molly Tan requested on multiple occasions that the video surveillance be installed at the hotel so that her mistreatment by AUSTIN be recorded, so as to protect herself.

78. CHOO LEE TAN a/k/a Molly Tan's requests for the video surveillance were heard but ignored until after AUSTIN was investigated by an internal hotel committee and dismissed, when the cameras were installed.

79. When the Vice Assistant General Manager Jessica visited AKA CP Hotel, she told CHOO LEE TAN a/k/a Molly Tan: "We all know Jackie gave you a very very hard time."

### Plaintiff's Racial Discrimination and National Origin Claims

80. CHOO LEE TAN a/k/a Molly Tan's National Origin is Malaysia.

81. CHOO LEE TAN a/k/a Molly Tan has lived in the United States since 1993 and is fluent in English, in addition to Mandarin, Cantonese and Malay.

82. In the beginning of February 2016, MARIZELA ALFARO was reassigned by SHK MANAGEMENT INC. d/b/a AKA Central Park Hotel; and d/b/a Korman Communities, Inc. from AKA Sutton Place at 330 E 56th St, New York, NY 10022 to AKA Central Park Hotel at 42 West 58th Street, New York, NY 10019 as Director of Housekeeping.

83. After MARIZELA ALFARO was assigned at CHOO LEE TAN a/k/a Molly Tan's immediate supervisor, MARIZELA ALFARO switched from using English in radio communication to using Spanish only.

84. Of the twenty-one (21) employees hired by AKA Central Park Hotel under the Housekeeping division, ten (10) employees are full-time housekeepers, while three (3) employees on on-call housekeepers.

85. Of the twenty-one (21) employees, eighteen (18) are Hispanic and English and Spanish-speaking while three (3) are Chinese and English and Chinese-speaking.

86. CHOO LEE TAN a/k/a Molly Tan is Malaysian and English, Chinese and Malaysian-speaking.

87. None of the three (3) Chinese employees, YING FENG, JU NA QIN a/k/a Lily Qin and XIAO NA LIU a/k/a Sally Liu, of AKA Central Park Hotel could speak Spanish.

88. All eighteen (18) Hispanic employees of AKA Central Park Hotel, BERTA, YENNY DILONE, JESSICA PRESENTES, PAULA RAMIREZ, MARIA TORRES, DOMINGO, ZUNILDA CABRERA, VICKY, HIRAM VARGAS, MELIDA RODRIGUEZ, LUCIDA RESTREPO, CARMEN SANTIAGO, BELKIS VENTURA, ANGIE CAMACHO, ANA, ROEVARN JORNALES, CARLA DEVERS, ALEXA LEE, could speak English, or had at least limited English proficiency which allowed them to perform their job duties of cleaning designated rooms because they had understood English well enough to work under CHOO LEE TAN a/k/a Molly Tan and other housekeeping supervisors, who cannot speak Spanish but can speak English.

89. CHOO LEE TAN a/k/a Molly Tan complained to MARIZELA ALFARO that "Marizela can you tell the lady call sick leave the message in English, I don't understand Spanish" and "Radio conversation in English I can listen and more clear" starting in the first two weeks of her work with MARIZELA ALFARO.

90. In March, CHOO LEE TAN a/k/a Molly Tan repeated her complaint at least three (3) other

separate occasions.

91. ALFARO responded: "I can tell you right now what we conversation," and ignored TAN's complaint that by using Spanish, which she was not proficient in, made it impossible for her to perform her job duties well.

92. Prior to MARIZELA ALFARO's promotion as Director of Housekeeping, all radio communication was made in English.

93. Under MARIZELA ALFARO's supervision, when CHOO LEE TAN a/k/a Molly Tan arrived to work each morning at 07:30, she was forced to request assistance from Spanish-speaking coworkers like the Houseman DOMINGO in order to understand the Spanish-language voice messages left by her Spanish-speaking coworkers if the coworkers call in sick.

94. The three (3) Chinese employees could not understand the Spanish-language radio communication either.

95. Even though MARIZELA ALFARO could speak English, and English was the language in common between all AKA CP Hotel employees, MARIZELA ALFARO chose to use Spanish to exclude the non-Spanish speaking employees, including CHOO LEE TAN a/k/a Molly Tan, from performing their job functions satisfactorily, as before.

96. With Spanish as the *only* language allowed by MARIZELA ALFARO, CHOO LEE TAN found it difficult to perform her job functions as before.

97. When CHOO LEE TAN a/k/a Molly Tan complained to MARIZELA ALFARO of ALFARO's exclusively Spanish communication with the hotel employees through the company radio, MARIZELA ALFARO ignored her complaint and continued using Spanish only.

98. In discrimination of CHOO LEE TAN a/k/a Molly Tan's race and in retaliation of CHOO LEE TAN a/k/a Molly Tan's complaint of the use of only Spanish language in walkie talkie on March 9, 2016, MARIZELA ALFARO asked CHOO LEE TAN a/k/a Molly Tan to sign an employment contract.

99. MARIZELA ALFARO informed CHOO LEE TAN a/k/a Molly Tan that all employees in the Housekeeping division and under ALFARO's supervision had signed the employment contract.

100.   CHOO LEE TAN a/k/a Molly Tan signed the contract in part based upon ALFARO's misrepresentation, and in part because the employment contract re-classified as a "Housekeeping Supervisor," a union-eligible position for the first time following her employment by AKA CP Hotel.

101.   In the contract, under the Responsibility section, CHOO LEE TAN a/k/a Molly Tan was required to "Ensure effective communication and maintain a professional and harmonious working relationship between all departments within the property, throughout the AKA brand and other brands and the corporate office leadership teams".

102.   In the contract, under the "Desired Skills" was "Proficiency in English and Spanish preferred (written and oral)."

103.   In the contract, under the "Physical Requirements" section, CHOO LEE TAN a/k/a Molly Tan was required to be "Able to work with chemicals," including dangerous chemicals that give her headaches.

104.   In reality, none of the employees under MARIZELA ALFARO's supervision had signed the employment contract.

105.   When CHOO LEE TAN a/k/a Molly Tan showed her coworkers the contract, including

HIRAM VARGAS, he told her that the contract put her position in peril because though CHOO LEE TAN a/k/a Molly Tan was an AKA CP Hotel housing supervisor since November 13, 2007 and had consistently performed her job well with English, the contract made it possible for MARIZELA ALFARO to fire CHOO LEE TAN a/k/a Molly Tan for ineffectual communication.

106.    Under MARIZELA ALFARO, CHOO LEE TAN a/k/a Molly Tan had Monday and Tuesday Off, while MARIZELA ALFARO had Saturday and Sunday off.

107.    MARIZELA ALFARO and CHOO LEE TAN worked together from Wednesday to Friday.

108.    As team members are expected to divide work amongst themselves equally, this meant that CHOO LEE TAN had to in addition to her responsibilities prior to March 2016, required to physically assist housekeepers in cleaning the rooms and clean rooms on her own if necessary.

109.    As part of the new responsibilities, CHOO LEE TAN a/k/a Molly Tan was required to carry a 15lb-20lb carry bag of 3 chemicals and towels to help clean the room.

110.    Furthermore, since beginning her work with AKA CP Hotel in 2007, CHOO LEE TAN a/k/a Molly Tan was also required to wear the radio on her waist.

111.    Furthermore, since the beginning of February 2016, MARIZELA ALFARO also assigned only seven (7) full-time housekeepers to work on Saturdays and six (6) full-time housekeepers on Sunday to work with CHOO LEE TAN, when more residences are booked and thus need to be cleaned, while assigning eight (8) and nine (9) housekeepers to work, when less residences are booked.

112.    During CHOO LEE TAN a/k/a Molly Tan's shift on Saturdays and Sundays, each

housekeeper were expected to clean eight (8) or more residences, while during MARIZELA

ALFARO's shift on Mondays and Tuesdays, each housekeeper was expected to clean

approximately six (6) residences.

113.   This meant that employees under CHOO LEE TAN's shift had a heavier workload.

114.   Further, on days when CHOO LEE TAN and MARIZELA ALFARO's shifts overlapped

(that is, on Tuesday through Friday), MARIZELA ALFARO would share TAN's work till

11:00, when she tells TAN, that "the rest is yours."

115.   The increased strain coupled with increased work hours led CHOO LEE TAN to call in

employees with on-call employees first and then employees by order of seniority to help

ease the workload.

116.   CHOO LEE TAN a/k/a Molly Tan requested for more staff to help out on weekends, but

MARIZELA ALFARO ignored her request. MARIZELA ALFARO told her that she prefers

having more employees on Monday and Tuesday.

117.   In April 19, 2016, CHOO LEE TAN was in so much pain as a result of the increased

workload that when she visited Dr. William Vu, DPT from New Welling Physical Therapy

& Acupuncture, PLLC, the doctor recommended her to take "Two-week rest and continued

regular PT treatment" for rehabilitation from overwork syndrome.

118.   On April 20, 2016, CHOO LEE TAN was in so much pain in her neck and her back that

119.    CHOO LEE TAN submitted her Doctor's note from William Vu, DPT.

120.   TAN told ALFARO that though the doctor recommended TAN to take one month sick

leave, TAN asked Doctor for two weeks only.

121.   ALFARO said: "I do not see that the Doctor give you off for two weeks."

122.   TAN pointed to the portion of the Doctor's note that recommended the two weeks of rest.

123.   ALFARO responded: "You do not have to listen to what Doctor says."

124.   MARIZELA ALFARO said "Talk to you later, at 2:30 with SUSAN CHOI-GRANT."

125.   On April 20, 2016, 14:30, CHOO LEE TAN was called into a meeting with MARIZELA ALFARO, who told her, "Old lady and new lady do not like to work for you. Before union come, I will let you go first."

126.   ALFARO's termination of TAN prevents TAN from taking steps to resolve the overworking of housekeepers during the weekends after the housekeeper ladies complained to the union with union delegate, the housekeeping supervisor CHOO LE TAN a/k/a Molly Tan and housekeepers.

127.   ALFARO's termination of TAN also prevents TAN from joining the union and seeking protection from the union.

128.   CHOO LEE TAN said "Lady right now they know how to compare Saturday and Sunday and Monday Tuesday there is less room to clean because Monday and Tuesday there are more ladies, less ladies on Saturday and Sunday."

129.   ALFARO responded: "I don't want you to attack me in front of SUSAN."

130.   TAN asked: "Did MJ know about this whole thing?"

131.   ALFARO responded: "She doesn't know yet. I will let her know later."

***Plaintiff's American with Disability Act of 1990 Discrimination Claims***

132.   On April 19, 2016, CHOO LEE TAN a/k/a Molly Tan visited William Vu, DPT., who diagnosed her with overwork syndrome.

133.   The doctor recommended that she immediately take one month rest from work, and to avoid certain activities, including "sustained sitting, standing, walking > 30 min or repeated R. arm movements, or lifting/ carrying weights > 3 lbs to prevent further static or dynamic

soft tissue damages".

134.    As a result, on April 19, 2016, CHOO LE TAN a/k/a Molly Tan requested one week's of

sick leave with Vu's doctor's note, even though the doctor's note recommended two weeks.

135.    MARIZELA ALFARO, upon seeing the doctor's note, said the Doctor was wrong and

terminated CHOO LEE TAN a/k/a Molly Tan.

136.    On April 20, 2016, MARIZELA ALFARO gave CHOO LEE TAN a/k/a Molly Tan her

termination letter despite more than nine (9) of service at AKA CP Hotel.

137.    Vice President of Korman Communities, MJ PASCHALL, was surprised by TAN's

termination.

138.    PASCHALL represented to CHOO LEE TAN a/k/a Molly Tan's years of experience and

dedication to AKA hotel, she could be assigned to work AKA United Nations Hotel at 234

East 46th Street, New York, NY 10017 (See Exhibit XX).

### Plaintiff's Religious Discrimination Claims

139.    CHOO LEE TAN a/k/a Molly Tan became an adherent to a Chinese Buddhist sect which

adherents refer to as the "Chinese Siddartha School" (hereinafter, the "Chinese Siddartha

School") in December 2013.

140.    Chinese Siddartha School adherents believe that that the founder of the sect, Buddhist

master HUI ZENG is the only living Buddha personally appointed by Amitabha; that HUI

ZENG holds an "infinite light infinitely life Sarira" which allows for adherents to reach

nirvana; and that HUI ZENG's collaboration with "Galactic Federation" Lord Ashtar, the

Guatama Buddha allowed her to spread the "infinite light infinite life" tool to help adherents

to gain peace and calm, and energy.

141.    In accordance with her religious beliefs and as part of the exercise of her religion, TAN

plays a muted video of the "Galactic Federation of Light School Infinite Light Infinite Life Tool" on her cellphone when she assigns schedule in the morning on the side.

142.    As soon as she finishes assigning schedule, she turns it off, because she will need to respond and check email from front desk and management.

143.    Previously, her supervisors including Director of Housekeeping JAQUELINE AUSTIN a/k/a Jackie Austin and General Manager JEFFREY POIROT as well as upper level management were aware of CHOO LEE TAN's sincere exercise of her religious beliefs and accommodated her video playing in her pocket.

144.    On the Employment Contract given to her on March 9, 2016 in retaliation for her complaint that radio communication was conducted in Spanish only, MARIZELA ALFARO suppressed CHOO LEE TAN's right to exercise her religion under the "Expectations" section, which states: "Phones should be used for work purposes ONLY. Molly is not permitted to carry the phone around with any type of video playing on it."

145.    MARIZELA ALFARO refused to accommodate Tan's sincerely held religious belief even when her predecessor and upper-level management accommodated her beliefs.

146.    As a result of MARIZELA ALFARO's discriminatory refusal to accommodate Tan's religious observation, and her subsequent termination of Tan, Tan lost her source of income and experienced emotional distress.

## COLLECTIVE ACTION ALLEGATIONS

147.    Plaintiff brings this action individually and as class representative individually and on behalf of all other and former non-exempt employees who have been or were employed by the Defendants for up to the last three (3) years, through entry of judgment in this case (the "Collective Action Period") and whom were not compensated overtime compensation at the

one-and-one-half rate for all hours worked in excess of forty (40) hours per week (the "Collective Action Members").

## CLASS ACTION ALLEGATIONS

148.    Plaintiff brings her NYLL claims pursuant to Federal Rules of Civil Procedure ("F. R. C. P.") Rule 23, on behalf of all non-exempt personnel employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class Period").

149.    All said persons, including Plaintiff, are referred to herein as the "Class."

150.    The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned and worked, the positions held, and the rate of pay for each Class Member is also determinable from Defendants' records. For purpose of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under said F.R.C.P 23.

### *Numerosity*

151.    The proposed Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parities and the Court. Although the precise number of such persons is unknown, and the facts on which the calculation of the number is presently within the sole control of the Defendants, upon information and belief, there are more than forty (40) members of the class.

### *Commonality*

152.    There are questions of law and fact common to the Class which predominate over any

questions affecting only individual class members, including:

     a.   Whether Defendant employed Plaintiff and the Class within the meaning of the New York law;

     b.   Whether Plaintiff and Class members are entitled to and paid overtime under the New York Labor Law;

     c.   Whether Defendants maintained a policy, pattern and/or practice of failing to pay Plaintiffs and the Rule 23 Class spread-of-hours pay as required by the NYLL;

     d.   Whether Defendants maintained policy, pattern and/or practice of failing to provide requisite statutory meal periods;

     e.   Whether Defendants provided a Time of Hire Notice detailing rates of pay and payday at the start of Plaintiffs and the Rule 23 Class's start of employment and/or or timely thereafter; and

     f.   At what common rate, or rates subject to common method of calculation was and is Defendants required to pay the Class members for their work.

***Typicality***

153.   Plaintiff's claims are typical of those claims which could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class in separate actions. All the Class members were subject to the same corporate practices of Defendants, as alleged herein, of failing to pay overtime compensation. Defendants' corporate wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/ or wrongful acts as to each Class member. Plaintiff and other Class members sustained similar losses, injuries and damages

arising from the same unlawful policies, practices and procedures.

### Adequacy

154.    Plaintiff is able to fairly and adequately protect the interests of the Class and have no

interests antagonistic to the Class.  Plaintiff is represented by attorneys who are experienced

and competent representing Plaintiffs in both class action and wage and hour employment

litigation cases.

### Superiority

155.    A class action is superior to other available methods for the fair and efficient adjudication

of the controversy, particularly in the context of wage and hour litigation where individual

Class members lack the financial resources to vigorously prosecute a lawsuit against

corporate defendants. Class action treatment will permit a large number of similarly situated

persons to prosecute their common claims in a single forum simultaneously, efficiently, and

without the unnecessary duplication of efforts and expenses that numerous individual

actions engender.  Because the losses, injuries, and damages suffered by each of the

individual Class members are small in the sense pertinent to a class action analysis, the

expenses and burden of individual litigation would make it extremely difficult or impossible

for the individual Class members to redress the wrongs done to them.  Further, important

public interests will be served by addressing the matter as a class action.  The adjudication

of individual litigation claims would result in a great expenditure of Court and public

resources; however, treating the claims as a class action would result in a significant saving

of these costs.  The prosecution of separate actions by individual members of the Class

would create a risk of inconsistent and/or varying adjudications with respect to the

individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties.  The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

156.    Upon information and belief, Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity which allows for the vindication of their rights while eliminating or reducing these risks.

## STATEMENT OF CLAIMS

### COUNT I.
### [Violations of the Fair Labor Standards Act—Overtime Wage Brought on behalf of the Plaintiff and the FLSA Collective]

157.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

158.    The FLSA provides that no employer engaged in commerce shall employ a covered employee for a work week longer than forty (40) hours unless such employee receives compensation for employment in excess of forty (40) hours at a rate not less than one and one-half times the regular rate at which she is employed, or one and one-half times the minimum wage, whichever is greater. 29 USC §207(a).

159.   The FLSA provides that any employer who violates the provisions of 29 U.S.C. §207

shall be liable to the employees affected in the amount of their unpaid overtime

compensation, and in an additional equal amount as liquidated damages. 29 USC §216(b).

160.   Defendants' failure to pay Plaintiff and the FLSA Collective their overtime pay violated

the FLSA.

161.   At all relevant times, Defendants had, and continue to have, a policy of practice of

refusing to pay overtime compensation at the statutory rate of time and a half to Plaintiff and

Collective Action Members for all hours worked in excess of forty (40) hours per

workweek, which violated and continues to violate the FLSA, 29 U.S.C. §§201, *et seq.*,

including 29 U.S.C. §§207(a)(1) and 215(a).

162.   The FLSA and supporting regulations required employers to notify employees of

employment law requires employers to notify employment law requirements. 29 C.F.R.

§516.4.

163.   Defendants willfully failed to notify Plaintiff and FLSA Collective of the requirements of

the employment laws in order to facilitate their exploitation of Plaintiffs' and FLSA

Collectives' labor.

164.   Defendants knowingly and willfully disregarded the provisions of the FLSA as evidenced

by their failure to compensate Plaintiff and Collective Class Members the statutory overtime

rate of time and one half for all hours worked in excess of forty (40) per week when they

knew or should have known such was due and that failing to do so would financially injure

Plaintiff and Collective Action members.

**COUNT II.**
**[Violation of New York Labor Law—Overtime Pay**
**Brought on behalf of Plaintiff and Rule 23 Class]**

165.   Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully
set forth herein.

166.   At all relevant times, Defendants had a policy and practice of refusing to pay the
overtime compensation to Plaintiffs at one and one half times the hourly rate the Plaintiff
and the class are entitled to.

167.   Defendant' failure to pay Plaintiff her overtime pay violated the NYLL.

168.   Defendants' failure to pay Plaintiff were not in good faith.

**COUNT III.**
**[Violation of New York Labor Law—Failure to Provide Meal Periods**
**Brought on behalf of Plaintiff and Rule 23 Class]**

169.   Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully
set forth herein.

170.   The NYLL requires that employees provide: a noon day meal period of at least thirty (30)
minutes for employees who work a shift of more than six hours extending over the noon day
meal period from 11 a.m. to 2 p.m.; an additional meal period between 5 p.m. and 7 p.m. of
at least twenty (20) minutes for employees whose shift started before 11 a.m. and continues
later than 7 p.m.; and/or a forty-five (45) minute meal period at a time midway between the
beginning and end of the shift for employees whose shift lasts more than six hours and starts
between 1 p.m. and 6 a.m. NYLL§ 162.

171.   Defendants failed to provide meal periods required by NYLL §162 for every day that
Plaintiffs and the Rule 23 class work or worked.

172.   Though the Department of Labor commissioner may permit a shorter time to be fixed for

meal periods than hereinbefore provided, such permit must be in writing and be kept

conspicuously posted in the main entrance of the establishment. No such permit is posted.

173.   Defendants' failure to provide the meal periods required by NYLL §162 was not in good

faith.


### COUNT IV.
### [Violation of New York Labor Law—Record-Keeping Requirements
### Brought on behalf of Plaintiff and Rule 23 Class]

174.   Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully

set forth herein.

175.   Defendants did not maintain, establish and preserve Plaintiffs' weekly payroll records for

a period of not less than six years, as required by NYRR § 146-2.1.

176.   As a result of Defendants' unlawful conduct, Plaintiff have sustained damages including

loss of earning, in an amount to be established at trial, liquidated damages, prejudgment

interest, costs and attorneys' fee, pursuant to the state law.

177.   Upon information and belief, Defendants failed to maintain adequate and accurate written

records of actual hours worked and true wages earned by Plaintiff in order to facilitate their

exploitation of Plaintiff's labor.

178.   Defendants' failure to maintain adequate and accurate written records of actual hours

worked and true wages earned by Plaintiff were not in good faith.


### COUNT V.
### [Violation of New York Labor Law—Time of Hire Wage Notice Requirement
### Brought on behalf of Plaintiff and Rule 23 Class]

179.   Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully

set forth herein.

180.   The NYLL and supporting regulations require employers to provide written notice of the

rate or rates of pay and the basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as a part of minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer.  NYLL §195-1(a).

181.   Defendants intentionally failed to provide notice to employees in violation of New York Labor Law § 195, which requires all employers to provide written notice in the employee's primary language about the terms and conditions of employment related to rate of pay, regular pay cycle and rate of overtime on their or her first day of employment.

182.   Defendants not only did not provide notice to each employee at Time of Hire, but failed to provide notice to Plaintiff even after the fact.

183.   Due to Defendants' violations of New York Labor Law, Plaintiff is entitled to recover from Defendants, jointly and severally, $50 for each workday that the violation occurred or continued to occur, up to $5,000, together with costs and attorneys' fees pursuant to New York Labor Law. N.Y. Lab. Law §198(1-b).

### COUNT VI.
#### [Violation of New York Labor Law—New York Pay Stub Requirement Brought on behalf of Plaintiff and Rule 23 Class]

184.   Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

185.   The NYLL and supporting regulations require employers to provide detailed paystub information to employees every payday. NYLL §195-1(d).

186.   Defendants have failed to make a good faith effort to comply with the New York Labor

Law with respect to compensation of each Plaintiff, and did not provide the paystub on or after each Plaintiffs' payday.

187.   Due to Defendants' violations of New York Labor Law, Plaintiff is entitled to recover from Defendants, jointly and severally, $250 for each workday of the violation, up to $5,000 for each Plaintiff together with costs and attorneys' fees pursuant to New York Labor Law. N.Y. Lab. Law §198(1-d).

**COUNT VII.**
**[Race Discrimination in Violation of the Civil Rights Act of 1866, 42 USC §1981**
**Brought on behalf of Plaintiff CHOO LEE TAN a/k/a Molly Tan**
**against SHK MANAGEMENT INC. d/b/a AKA Central Park Hotel; and d/b/a**
**Korman Communities, Inc and MARIZELA ALFARO]**

188.   Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

189.   The aforesaid discriminatory acts and omissions of Defendants and their agents interfered with Plaintiff and their right to enforce contracts.

190.   The purpose of Defendants and their agents in so acting was to prevent Plaintiff through economic and psychological intimidation, from seeking the equal protection of the laws, and from enjoying the equal privileges and immunities of citizens under the Constitution and laws of the United States and State of New York.

191.   Pursuant to their conduct, Defendants and their agents acted to deprive the Plaintiff of her civil rights, by repeated acts of bad faith in violation of 42 U.S.C. §1981.

192.   As a result, Plaintiff suffered mental anguish, emotional distress, loss of employment opportunities, and other monetary damages.

## COUNT VIII.
### [Racial Discrimination in Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000(e) *et. Seq*
### Brought on behalf of Plaintiff CHOO LEE TAN a/k/a Molly Tan
### against SHK MANAGEMENT INC. d/b/a AKA Central Park Hotel; and d/b/a Korman Communities, Inc and MARIZELA ALFARO]

193.   Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

194.   Plaintiff alleges that Defendants and their agents discriminated against Plaintiff with respect to the terms and conditions of employment because of race, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq*., as amended by the Civil Rights Act of 1991.

195.   Defendants' conduct has been intentional, deliberate, willful and conducted in callous disregard of the rights of Plaintiff under the law.

196.   By virtue of Defendants' conducted alleged herein, Plaintiff has been financially and psychologically injured.

## COUNT IX.
### [National Origin Discrimination in Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000(e) *et. Seq*
### Brought on behalf of Plaintiff CHOO LEE TAN a/k/a Molly Tan
### against SHK MANAGEMENT INC. d/b/a AKA Central Park Hotel; and d/b/a Korman Communities, Inc and MARIZELA ALFARO]

197.   Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

198.   Plaintiff alleges that Defendants and their agents discriminated against Plaintiff with respect to the terms and conditions of employment because of national origin, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq*., as amended by the Civil

Rights Act of 1991.

199.   Defendants' conduct has been intentional, deliberate, willful and conducted in callous disregard of the rights of Plaintiff under the law.

200.   By virtue of Defendants' conducted alleged herein, Plaintiff has been financially and psychologically injured.

**COUNT X.**
**[Religious Discrimination in Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000(e) *et. Seq***
**Brought on behalf of Plaintiff CHOO LEE TAN a/k/a Molly Tan**
**against SHK MANAGEMENT INC. d/b/a AKA Central Park Hotel; and d/b/a Korman Communities, Inc and MARIZELA ALFARO]**

201.   Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

202.   Plaintiff alleges that Defendants and their agents discriminated against Plaintiff with respect to the terms and conditions of employment because of religon, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq*., as amended by the Civil Rights Act of 1991.

203.   Defendants' conduct has been intentional, deliberate, willful and conducted in callous disregard of the rights of Plaintiff under the law.

204.   By virtue of Defendants' conducted alleged herein, Plaintiff has been financially and psychologically injured.

205.

206.

## COUNT XI.
**[Wrongful Termination in Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000(e) *et. Seq***
**Brought on behalf of Plaintiff CHOO LEE TAN a/k/a Molly Tan**
**against SHK MANAGEMENT INC. d/b/a AKA Central Park Hotel; and d/b/a Korman Communities, Inc and MARIZELA ALFARO]**

207.   Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

208.   Plaintiffs allege that Defendants and their agents discriminated against Plaintiffs with respect to the terms and conditions of employment because of race, national origin, age, disability and religion, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq*., as amended by the Civil Rights Act of 1991.

209.   Defendants' conduct has been intentional, deliberate, willful and conducted in callous disregard of the rights of Plaintiffs under the law.

210.   By virtue of Defendants' conducted alleged herein, Plaintiffs have been financially and psychologically injured.

## COUNT XII.
**[Hostile Work Environment in Violation of the Civil Rights Act of 1866, 42 USC §1981**
**Brought on behalf of Plaintiff CHOO LEE TAN a/k/a Molly Tan**
**against SHK MANAGEMENT INC. d/b/a AKA Central Park Hotel; and d/b/a Korman Communities, Inc and MARIZELA ALFARO]**

211.   Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

212.   Plaintiffs allege that Defendants and their agents engaged in various and severe and hostile actions against them acting individually as a result of their opposition to race discrimination, nation origin discrimination, age discrimination, religious discrimination and disability

discrimination.

213.   That the purpose of Defendants and their actions in so seeking was to prevent Plaintiffs

through economic and psychological intimidation, from seeking equal protection of the laws,

and from enjoying the equal privileges and immunities of citizens under the Constitution and

laws of the United States and State of New York.

214.   Pursuant to their conduct, Defendants and their agents acted to deprive the Plaintiffs of

their civil rights, by repeated and insidious acts of harassment, intimidation, bad faith, and

threat, all in violation of 42 U.S.C. §1981.

215.   As a result of the aforesaid acts, depriving Plaintiffs of their civil rights, they suffered

mental anguish, emotional distress, loss of employment opportunities, and other monetary

damages.

**COUNT XIII.**
**[Violation of Americans with Disabilities Act of 1990, as amended 2008**
**Brought on behalf of Plaintiff CHOO LEE TAN a/k/a Molly Tan**
**against SHK MANAGEMENT INC. d/b/a AKA Central Park Hotel; and d/b/a**
**Korman Communities, Inc and MARIZELA ALFARO]**

216.   Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully

set forth herein.

217.   Americans with Disabilities Act Amendment Act of 2008 makes it unlawful to discriminate

against any individual in the terms, conditions, or privileges of employment on the basis of

his or her disability.

218.   Under the Americans with Disabilities Act of 1990, "disability" means, with respect to an

individual—

    a.   A physical or mental impairment that substantially limits one or more major life

       activities of such individual;

     b.   A record of such an impairment; or

     c.   Being regarded as having such an impairment. 42 U.S. C. 12102 §3 (1).

219.   Major life activities include walking, standing, lifting, bending, and working.

220.   As a diagnosed patient of overwork syndrome, Plaintiff CHOO LEE TAN was conduct any "duty/ job/ work which required sustained sitting, walking > 30 min, or repeated R. arm movements, or lifting/ carrying weights > 3lb to prevent further static or dynamic soft tissue damages."

221.   Plaintiff CHOO LEE TAN a/k/a Molly Tan, as a diagnosed patient of overwork syndrome, is considered disabled under the Americans with Disabilities Act Amendment Act of 2008.

222.   Defendants SHK MANAGEMENT INC. d/b/a AKA Central Park Hotel; and d/b/a KormanCommunities, Inc and MARIZELA ALFARO failed to make reasonable accommodation to Plaintiff CHOO LEE TAN a/k/a Molly Tan.

**COUNT XIV.**
**[Violation of Age Discrimination in Employment Act of 1967, as amended 2008**
**Brought on behalf of Plaintiff CHOO LEE TAN a/k/a Molly Tan**
**against SHK MANAGEMENT INC. d/b/a AKA Central Park Hotel; and d/b/a**
**Korman Communities, Inc and MARIZELA ALFARO]**

223.   Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

224.   Age Discrimination in Employment Act of 1967 makes it unlawful to discriminate against any individual age 40 older in the terms, conditions, or privileges of employment on the basis of his or her age.

225.   Plaintiff CHOO LEE TAN a/k/a Molly Tan, turned 40 years of age on February 5, 2009, as of this date the Age Discrimination in Employment Act (ADEA) applies to her.

226.   Defendants SHK MANAGEMENT INC. d/b/a AKA Central Park Hotel; and d/b/a

KormanCommunities, Inc and MARIZELA ALFARO failed to make reasonable accommodation to Plaintiff CHOO LEE TAN a/k/a Molly Tan.

## COUNT XV.
**[Race Discrimination in Violation of New York State Human Rights  Law §296
Brought on behalf of Plaintiff CHOO LEE TAN a/k/a Molly Tan
against SHK MANAGEMENT INC. d/b/a AKA Central Park Hotel; and d/b/a
Korman Communities, Inc and MARIZELA ALFARO]**

227.   Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

228.   New York State Human Rights Law §296 et seq., makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment on the basis of race. The law also makes it unlawful to create a severe and hostile environment where retaliation and race discrimination are encouraged and/or tolerated.

## COUNT XVI.
**[National Origin Discrimination in Violation of New York State Human Rights
Law §296
Brought on behalf of Plaintiff CHOO LEE TAN a/k/a Molly Tan
against SHK MANAGEMENT INC. d/b/a AKA Central Park Hotel; and d/b/a
Korman Communities, Inc and MARIZELA ALFARO]**

229.   Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

230.   New York State Human Rights Law §296 et seq., makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment on the basis of national origin. The law also makes it unlawful to create a severe and hostile environment where retaliation and race discrimination are encouraged and/or tolerated.

## COUNT XVII.
**[Religious Discrimination in Violation of New York State Human Rights Law §296
Brought on behalf of Plaintiff CHOO LEE TAN a/k/a Molly Tan
against SHK MANAGEMENT INC. d/b/a AKA Central Park Hotel; and d/b/a
Korman Communities, Inc and MARIZELA ALFARO]**

231.   Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully

set forth herein.

232.    New York State Human Rights Law §296 et seq., makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment on the basis of religion The law also makes it unlawful to create a severe and hostile environment where retaliation and race discrimination are encouraged and/or tolerated.

## COUNT XVIII.
**[Age Discrimination in Violation of New York State Human Rights Law §296
Brought on behalf of Plaintiff CHOO LEE TAN a/k/a Molly Tan
against SHK MANAGEMENT INC. d/b/a AKA Central Park Hotel; and d/b/a
Korman Communities, Inc and MARIZELA ALFARO]**

233.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

234.    New York State Human Rights Law §296 et seq., makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment on the basis of age. The law also makes it unlawful to create a severe and hostile environment where retaliation and race discrimination are encouraged and/or tolerated.

## COUNT XIX.
**[Diasibilty Discrimination in Violation of New York State Human Rights Law §296
Brought on behalf of Plaintiff CHOO LEE TAN a/k/a Molly Tan
against SHK MANAGEMENT INC. d/b/a AKA Central Park Hotel; and d/b/a
Korman Communities, Inc and MARIZELA ALFARO]**

235.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

236.    New York State Human Rights Law §296 et seq., makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment on the basis of disability. The law also makes it unlawful to create a severe and hostile environment where retaliation and race discrimination are encouraged and/or tolerated.

## COUNT XX.
### [Violation of New York State Human Rights Law
### Aiding and Abetting
### Brought on behalf of Plaintiff CHOO LEE TAN a/k/a Molly Tan
### against SHK MANAGEMENT INC. d/b/a AKA Central Park Hotel; and d/b/a
### Korman Communities, Inc and MARIZELA ALFARO]

237.   Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully

set forth herein.

238.   Defendant MARIZELA ALFARO is a manager/ supervisor of Plaintiff during all relevant

times mentioned herein.

239.   Tsolkas, Cedeno and Chong aided and abetted Corporate Defendants in its discriminatory,

hostile and retaliatory conduct against Plaintiffs when they questioned Defendants' racially

discriminatory labor practices.

240.   The acts and/or omissions of Defendants were intentional, willful, reckless and

discriminatory in nature, and directly motivated by Plaintiffs' race and/or in retaliation for

Plaintiffs' complaints of discrimination.

241.   By virtue of Defendants' conduct as alleged herein, Plaintiffs have been injured.

242.

## COUNT XXI.
### [Race Discrimination in Violation of New York City Human Rights Law §8-107
### Brought on behalf of Plaintiff CHOO LEE TAN a/k/a Molly Tan
### against SHK MANAGEMENT INC. d/b/a AKA Central Park Hotel; and d/b/a
### Korman Communities, Inc and MARIZELA ALFARO]

243.   Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully

set forth herein.

244.   New York City Human Rights Law §8-107 et seq., makes it unlawful to discriminate

against any individual in the terms, conditions, or privileges of employment on the basis of

race. The law also makes it unlawful to create a severe and hostile environment where

retaliation and race discrimination are encouraged and/or tolerated.

**COUNT XXII.[National Origin Discrimination in Violation of New York City Human Rights Law §8-107**
**Brought on behalf of Plaintiff CHOO LEE TAN a/k/a Molly Tan**
**against SHK MANAGEMENT INC. d/b/a AKA Central Park Hotel; and d/b/a Korman Communities, Inc and MARIZELA ALFARO]**

245.   Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

246.   New York City Human Rights Law §8-107 et seq., makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment on the basis of race. The law also makes it unlawful to create a severe and hostile environment where retaliation and race discrimination are encouraged and/or tolerated.

**COUNT XXIII.[Age Discrimination in Violation of New York City Human Rights Law §8-107**
**Brought on behalf of Plaintiff CHOO LEE TAN a/k/a Molly Tan**
**against SHK MANAGEMENT INC. d/b/a AKA Central Park Hotel; and d/b/a Korman Communities, Inc and MARIZELA ALFARO]**

247.   Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

248.   New York City Human Rights Law §8-107 et seq., makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment on the basis of race. The law also makes it unlawful to create a severe and hostile environment where retaliation and race discrimination are encouraged and/or tolerated.

**COUNT XXIV.[Religious Discrimination in Violation of New York City Human Rights Law §8-107**
**Brought on behalf of Plaintiff CHOO LEE TAN a/k/a Molly Tan**
**against SHK MANAGEMENT INC. d/b/a AKA Central Park Hotel; and d/b/a Korman Communities, Inc and MARIZELA ALFARO]**

249.   Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

250.  New York City Human Rights Law §8-107 et seq., makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment on the basis of race. The law also makes it unlawful to create a severe and hostile environment where retaliation and race discrimination are encouraged and/or tolerated.

**COUNT XXV.[Diability Discrimination in Violation of New York City Human Rights Law §8-107
Brought on behalf of Plaintiff CHOO LEE TAN a/k/a Molly Tan
against SHK MANAGEMENT INC. d/b/a AKA Central Park Hotel; and d/b/a
Korman Communities, Inc and MARIZELA ALFARO]**

251.  Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

252.  New York City Human Rights Law §8-107 et seq., makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment on the basis of race. The law also makes it unlawful to create a severe and hostile environment where retaliation and race discrimination are encouraged and/or tolerated.

253.

254.

**COUNT XXVI.
[Violation of Family and Medical Leave Act]**

255.  Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

256.  Section 2612(D) of the Family Medical Leave Act, states in pertinent part: "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period … Because of a serious health condition that makes the employee unable to perform the functions of the position of such employee."

257.  Section 2615(a) of the Family Medical Leave Act, states in pertinent part: "Interference

with rights. (1) Exercise of rights. It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter. (2) Discrimination. It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter."

258.    Defendants discriminated against Plaintiff in retaliation for exercising her rights under the FMLA.

259.    As such, Plaintiff has been damaged as set forth herein.

### COUNT XXVII.
**[Intentional Infliction of Emotional Distress**
**Brought on behalf of Plaintiff CHOO LEE TAN a/k/a Molly Tan**
**against SHK MANAGEMENT INC. d/b/a AKA Central Park Hotel; and d/b/a**
**Korman Communities, Inc and MARIZELA ALFARO]**

260.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

261.    Defendants' act and/or omissions were intentional, willful, reckless and discriminatory in nature and directly motivated by Plaintiffs' race, national origin, religion, age and disability.

262.    Defendants' act and/or omissions were intimidating, pervasive, extreme, outrageous, and intended to cause severe emotional distress to Plaintiffs.

263.    Defendants' act and/or omissions were deliberately reprehensible and atrocious and in direct retaliation for Plaintiffs' complaint of race-based discrimination, nation origin based discrimination, religious based discrimination, age based discrimination and disability based discrimination.

264.    By virtue of the foregoing, Plaintiffs have suffered severe emotional and physical distress.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on her own behalf, and on the behalf of the FLSA Collective Plaintiffs and Rule 23 Class, respectfully requests that this Court enter a judgment providing the following relief:

a)   Authorizing Plaintiff at the earliest possible time to give notice of this collective action, or that the Court issue such notice, to all persons who are presently, or have up through the extent allowable under the statute of limitations and including the date of issuance of court-supervised notice, been employed by Defendants as non-exempt employees. Such notice shall inform them that the civil notice has been filed, of the nature of the action, of their right to join this lawsuit if they believe they were denied premium overtime wages;

b)   Certification of this case as a collective action pursuant to FLSA;

c)   Issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims and state claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b), and appointing Plaintiff and her counsel to represent the Collective Action Members;

d)   A declaratory judgment that the practices complained of herein are unlawful under FLSA and New York Labor Law;

e)   An injunction against Corporate Defendants, its officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of unlawful practices and policies set forth herein;

f)      An award of unpaid overtime wages due under FLSA and New York Labor Law due
        Plaintiff and the Collective Action members plus compensatory and liquidated
        damages in the amount of twenty five percent (25%) prior to April 9, 2011 and one
        hundred percent (100%) thereafter under NY Wage Theft Prevention Act;

g)      An award of liquidated and/or punitive damages as a result of Defendants' knowing
        and willful failure to pay overtime compensation pursuant to 29 U.S.C. §216;

h)      Up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a
        Time of Hire Notice detailing rates of pay and payday;

i)      Up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a
        paystub that lists employee's name, employer's name, employer's address and
        telephone number, employee's rate or rates of pay, any deductions made from
        employee's wages, and the employee's gross and net wages for each pay day;

j)      An award of liquidated and/ or punitive damages as a result of Defendants' willful
        failure to overtime compensation and "spread of hours" premium pursuant to New
        York Labor Law;

k)      An award of costs and expenses of this action together with reasonable attorneys' and
        expert fees pursuant to 29 U.S.C. §216(b) and NYLL §§198 and 663;

l)      The cost and disbursements of this action;

m)      An award of prejudgment and post-judgment fees;

n)      Providing that if any amounts remain unpaid upon the expiration of ninety (90) days
        following the issuance of judgment, or ninety (90) days after expiration of the time to
        appeal and no appeal is then pending, whichever is later, the total amount of judgment

shall automatically increase by fifteen (15) percent, as required by NYLL §198(4); and

o)    Such other and further legal and equitable relief as this Court deems necessary, just, and proper.

Further, Plaintiff respectfully requests the Court to grant the following relief against Defendants for Plaintiff's claims:

p)    Declaring the acts and practices complained of herein in violation of the Civil Rights Act of 1866, the Title VII of the Civil Rights Act of 1964, the New York State Executive Law §296, and the New York City Human Rights Law §8-107 and/or the Americans with Disabilities Act of 1990, as amended;

q)    Enjoining defendants, their officers, employees, successors, franchises, agents and other persons in active concerts or participation with any of them, from engaging in any act or practices which, on the basis of race, denies or abridges any rights secured by the Civil Rights Act of 1866, the Title VII of the Civil Rights Act of 1964, the New York State Executive Law §296, and the New York City Human Rights Law §8-107 to prevent defendants from so doing in the future;

r)    Enjoining defendants, their officers, employees, successors, franchises, agents and other persons in active concerts or participation with any of them, from engaging in any act or practices which, on the basis of race, denies or abridges any rights secured by the Americans with Disabilities Act of 1990 to prevent defendants from so doing in the future;

s)    Directing defendants to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated and do not continue to affect plaintiff's employment opportunities;

t)    Directing defendants to place plaintiffs in the position they would be in but for defendants' discriminatory treatment towards them, and to make whole for all earnings they would have received but for defendants' discriminatory treatment;

u)    An award of front pay for Defendants' unlawful termination of Plaintiff in violation of the Civil Rights Act of 1866, the Title VII of the Civil Rights Act of 1964, the New York State Executive Law §296, and the New York City Human Rights Law §8-107;

v)    An award of front pay for Defendants' unlawful termination of Plaintiff in violation of the Civil Rights Act of 1866, the Title VII of the Civil Rights Act of 1964, the New York State Executive Law §296, the New York City Human Rights Law §8-107 and the Americans with Disabilities Act of 1990, as amended;

w)    An award of punitive damages, in an amount, not less than $500,000 against STEVEN H KORMAN, LAWRENCE KORMAN, BRADLEY I KORMAN, MARK KORMAN, KATHLEEN M PALMEN, ROBERT S GROSSMAN, and Managers JAQUELINE AUSTIN a/k/a Jackie Austin and MARIZELA ALFARO from engaging in unlawful discriminatory practices, policies and patterns set forth herein under the Civil Rights Act of 1866;

x)    An award of punitive damages, in an amount, not less than $300,000 against STEVEN H KORMAN, LAWRENCE KORMAN, BRADLEY I KORMAN, MARK KORMAN, KATHLEEN M PALMEN, ROBERT S GROSSMAN, and Managers JAQUELINE AUSTIN a/k/a Jackie Austin and MARIZELA ALFARO from engaging

in unlawful discriminatory practices, policies and patterns set forth herein under the Title VII of the Civil Rights Act of 1964;

y)    An award of punitive damages, in an amount, not less than $500,000 against STEVEN H KORMAN, LAWRENCE KORMAN, BRADLEY I KORMAN, MARK KORMAN, KATHLEEN M PALMEN, ROBERT S GROSSMAN, and Managers JAQUELINE AUSTIN a/k/a Jackie Austin and MARIZELA ALFARO from engaging in unlawful discriminatory practices, policies and patterns set forth herein under the New York State Executive Law §296;

z)    An award of punitive damages, in an amount, not less than $500,000 against STEVEN H KORMAN, LAWRENCE KORMAN, BRADLEY I KORMAN, MARK KORMAN, KATHLEEN M PALMEN, ROBERT S GROSSMAN, and Managers JAQUELINE AUSTIN a/k/a Jackie Austin and MARIZELA ALFARO from engaging in unlawful discriminatory practices, policies and patterns set forth herein under the New York City Human Rights Law §8-107 and;

aa)    An award of punitive damages, in an amount, not less than $500,000 against STEVEN H KORMAN, LAWRENCE KORMAN, BRADLEY I KORMAN, MARK KORMAN, KATHLEEN M PALMEN, ROBERT S GROSSMAN, and Managers JAQUELINE AUSTIN a/k/a Jackie Austin and MARIZELA ALFARO from engaging in unlawful discriminatory practices, policies and patterns set forth herein under the Age Discrimination in Employment of 1967;

bb)    An award of compensatory damages, in an amount not less than $500,000, for mental anguish, emotional distress, loss of employment opportunities, and other monetary damages against STEVEN H KORMAN, LAWRENCE KORMAN, BRADLEY I

KORMAN, MARK KORMAN, KATHLEEN M PALMEN, ROBERT S

GROSSMAN, and Managers JAQUELINE AUSTIN a/k/a Jackie Austin and

MARIZELA ALFARO for their racial discrimination at the workplace under the Civil

Rights Act of 1866;

cc)     An award of compensatory damages, in an amount not less than $500,000, for mental

anguish, emotional distress, loss of employment opportunities, and other monetary

damages against STEVEN H KORMAN, LAWRENCE KORMAN, BRADLEY I

KORMAN, MARK KORMAN, KATHLEEN M PALMEN, ROBERT S

GROSSMAN, and Managers JAQUELINE AUSTIN a/k/a Jackie Austin and

MARIZELA ALFARO for their racial discrimination at the workplace under the Title

VII of the Civil Rights Act of 1964;

dd)     An award of compensatory damages, in an amount not less than $500,000, for mental

anguish, emotional distress, loss of employment opportunities, and other monetary

damages against STEVEN H KORMAN, LAWRENCE KORMAN, BRADLEY I

KORMAN, MARK KORMAN, KATHLEEN M PALMEN, ROBERT S

GROSSMAN, and Managers JAQUELINE AUSTIN a/k/a Jackie Austin and

MARIZELA ALFARO for their racial discrimination at the workplace under the New

York State Executive Law §296;

ee)     An award of compensatory damages, in an amount not less than $500,000, for mental

anguish, emotional distress, loss of employment opportunities, and other monetary

damages against STEVEN H KORMAN, LAWRENCE KORMAN, BRADLEY I

KORMAN, MARK KORMAN, KATHLEEN M PALMEN, ROBERT S

GROSSMAN, and Managers JAQUELINE AUSTIN a/k/a Jackie Austin and

MARIZELA ALFARO for their racial discrimination at the workplace under the New York City Human Rights Law §8-107;

ff)    An award of compensatory damages, in an amount not less than $500,000, for mental anguish, emotional distress, loss of employment opportunities and other monetary damages against STEVEN H KORMAN, LAWRENCE KORMAN, BRADLEY I KORMAN, MARK KORMAN, KATHLEEN M PALMEN, ROBERT S GROSSMAN, and Managers JAQUELINE AUSTIN a/k/a Jackie Austin and MARIZELA ALFARO for their age discrimination at the workplace under the Age Discrimination in Employment of 1967.

gg)    An injunction against STEVEN H KORMAN, LAWRENCE KORMAN, BRADLEY I KORMAN, MARK KORMAN, KATHLEEN M PALMEN, ROBERT S GROSSMAN, and Managers JAQUELINE AUSTIN a/k/a Jackie Austin and MARIZELA ALFARO  for aiding and abetting discriminatory practices against Plaintiffs;

hh)    For prejudgment interest;

ii)    For post-judgment interest;

jj)    For reasonable attorney's fees, together with the costs and expenses incurred in this action; and

kk)    For such other and further relief as this Court deems just and proper.

Further, Plaintiff respectfully requests the following relief against Defendants for Plaintiff's FMLA claims:

ll)    Declaring that Defendants engaged in unlawful employment practices prohibited by the Family and Medical Leave Act, 29 U.S.C. § 2601, et seq. and the New York City

Human Rights Law, Administrative Code § 8-107 et seq., by discriminating against Plaintiff on the basis of her disability and then unlawfully terminating her employment due to her disability and in retaliation for exercising her rights under the FMLA;

mm)  Awarding damages to Plaintiff for all lost wages and benefits resulting from Defendants' unlawful discrimination and retaliation and to otherwise make her whole for any losses suffered as a result of such unlawful employment practices;

nn)  Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to her reputation in an amount to be proven;

oo)  Awarding Plaintiff attorneys' fees, costs, disbursements, and expenses incurred in the prosecution of the action;

## <u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to Rule 38(b) and 38(c) of the Federal Rules of Civil Procedures, Plaintiffs demand a trial by jury on all questions of facts relating to Discrimination issues of the Complaint.

Dated: Flushing, New York
December 1, 2016

                                    TROY LAW, PLLC
                                    *Attorney for the Plaintiff, proposed FLSA*
                                    *Collective and Proposed Class Plaintiffs*

                                      /s/ John Troy
                                    John Troy (JT0481)
                                    41-25 Kissena Boulevard Suite 119
                                    Flushing, NY 11355
                                    Tel: (718) 762-1324
                                    Email: johntroy@troypllc.com